## PEOPLE v. MOST.

(*Supreme Court, General Term, First Department.*   January 24, 1890.)

1. UNLAWFUL ASSEMBLY—EVIDENCE.

Pen. Code N. Y. § 451, provides that whenever three or more persons, being assembled, attempt or threaten any act tending towards a breach of the peace, or an injury to person or property, or any unlawful act, such an assembly is unlawful, and every person participating therein is guilty of a misdemeanor. At a meeting held to protest against the execution of the Chicago anarchists, defendant made a speech in which he glorified their deeds, sympathized with their fate, denounced and threatened with death the officers connected with their case, stated that those present had a more powerful weapon than the officers of the law possessed, and called on them to arm and resist the authorities. *Held,* that the evidence was sufficient to sustain defendant's conviction, under the statute.

2. CRIMINAL LAW—CONDUCT OF DISTRICT ATTORNEY.

During the trial the district attorney offered in evidence a book on revolutionary warfare, written by defendant, which was excluded, and persisted in offering to show by defendant's witnesses that they were familiar with the book, and these offers were also excluded. *Held,* that the persistence was not of such a character as to prejudice defendant, and the conviction would not be reversed on that ground.

Appeal from court of general sessions, New York county.

Indictment for threatened breach of the peace. Defendant was convicted. and sentenced to be imprisoned for one year, from which judgment he appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and MACOMBER, JJ.

*Howe & Hummel,* for appellant. *John R. Fellows,* Dist. Atty., and *McKenzie Semple,* Asst. Dist. Atty., for the People.

MACOMBER, J. The act under which the defendant was convicted, generally known as the "Unlawful Assemblage Act," declares that whenever three or more persons, being assembled, attempt or threaten any act tending towards a breach of the peace, or an injury to person or property, or any unlawful act, such an assembly is unlawful, and every person participating therein, by his presence, aid, or instigation, is guilty of a misdemeanor. Pen. Code, § 451, subd. 3. The offense of the defendant was committed at Kraemer's Hall on the 12th day of November, 1887, where there was an assemblage of 80 or 100 persons, who had met to protest against the execution of Spies, Parsons, Engle, and Fischer in Chicago, for the murder, by means of dynamite bombs and explosives, of a number of policemen there; eulogizing and extolling the character of such persons, who were known as active anarchists. Two meetings were projected of the sympathizers of the Chicago anarchists, in New York city, at which the defendant was expected to speak,—one of them to be held at Florence Hall, on the corner of First street and Second avenue; and the other at Kraemer's Hall, at No. 134 East Seventeenth street. The meeting at Florence Hall had been prevented by the police, and neither the defendant nor any other person made any address at that place. The defendant was the principal speaker at Kraemer's Hall, and was aware of the fact that the meeting at Florence Hall had been prohibited and prevented by the activity of the police. The threatened breach of the peace which the defendant is accused of attempting is shown by the evidence of three witnesses in behalf of the people, namely, Louis Roth and John J. Sachs, police officers, and Solomon S. Dreyfuss, a newspaper reporter. The testimony of these witnesses does not differ in material matters, though there appear to be verbal and unimportant discrepancies, which are sometimes deemed not a disparagement, but a confirmation of the integrity of the witnesses. The testimony of only one of them, Louis Roth, is necessary to be cited. This witness' version of the address of the defendant is as follows: "He began with 'Slaves,'— addressed the audience as 'Slaves.' 'I have just heard that the meeting, which was to be held over our murdered brethren in Chicago, was stopped by the police hounds. Beware, you scoundrels! Hereafter our

councils will be held in secret. God help them if they are found in our councils.' The next of his remarks was with regard to the gallantry and the way they died,— how they were strangled to death, not properly hanged, and what a good cause they died for; and he was willing to die for the same cause." "Then he commenced," the witness says: " 'Beware you. First comes that murderer Grinnell,— Grinnell the perjurer. He got a jury of hired capitalists, who were well paid for their services. They say Lingg committed suicide. I say no, they have murdered him; for he was too brave a man to do such an act. The day of revolution will soon come. First of all will be Grinnell, and then comes Judge Gary, then the supreme court of the state of Illinois, then the highest murderers of the land, the supreme court of the United States; the most cruel of all, Oglesby, the governor of Illinois. He must not think, because he pardoned two of our brethren to a lingering death of life imprisonment, that he will be spared. Again I urge you to arm yourselves, as the day of revolution is not far off, and when it comes see that you are ready to resist and kill these hirelings of the capitalists. What do we care for a few soldiers, cannon, gatling-guns, or police? We have a weapon an hundred-fold worse than theirs. They think they kill five of our brethren, but we will have an hundred or five hundred for every one they have murdered. If I but knew the executioner who murdered—who strangled—our brothers, I would never rest until he had shared the same fate.'" Mr. Grinnell, referred to in the speech of which the foregoing consists of extracts, was the prosecuting attorney who conducted the trial of the Chicago anarchists in behalf of the state. Mr. Gary was Judge GARY, who presided at the trial, and who sentenced the convicted anarchists. The justices of the supreme court of the state of Illinois were the persons who had affirmed the conviction and sentence of the trial court. The judges of the supreme court of the United States had denied to the convicted persons a writ of error and *supersedeas*. Oglesby was the governor of the state of Illinois, who had refused to pardon or commute the sentences of the four persons who were hanged, though he had commuted the sentences of two other of the convicted persons.

The testimony in behalf of the defendant was given by himself and 11 other persons who were present at the meeting, many of whom, though sympathizing with the speaker in the main, differed from him in certain measures designed to bring about a common purpose. This evidence, as a whole, contradicted point-blank the case made by the people, and the question, consequently, was an interesting one for the consideration of the jury. The jury having found that the version of the three witnesses sworn on behalf of the people was truthful and reliable, and sufficient to sustain a conviction, the judgment cannot be disturbed unless, as matter of law, the testimony given by them was insufficient, upon legal principles, to warrant the conviction of the defendant. The proposition that, if this evidence given by the people be true, the defendant was properly convicted, is hardly denied by the learned counsel for the defendant. If true, it is plain that the words tended to incite the people assembled to unlawful acts. Coupled, as these utterances were, not only with expressions of sympathy for the fate of the Chicago anarchists, but with a glorification of their deeds, and an incitation to murder public officers for discharge of public duty, made a situation of affairs designed to be met by this law, and brought the case directly within the letter and the spirit of the statute under which the defendant was indicted.

But it is claimed by the learned counsel for the defendant that their client was prejudiced by the conduct of the then prosecuting officer of the people, who, it is argued, did·unwarrantable acts in securing the conviction of the defendant, of such a character as would justify the court in setting aside the verdict. No criticism is made of the rulings of the learned judge upon the trial, nor of his impartial and clear charge to the jury. The then assistant

district attorney sought to introduce in evidence a book which he claimed the defendant had written about three years previous to the trial, called "A Manual of Revolutionary Warfare." It was offered to show that several of the witnesses of the defendant were familiar with this book, which, it was claimed, was a description of a substance more powerful than gatling-guns and *mitrailleuses*, to-wit, nitro-glycerine and dynamite, to which it is claimed the defendant referred in his speech at the meeting attended by the witnesses. It probably would have been no error to have received the answers of the witnesses who were interrogated in regard thereto, but, from an abundance of caution, the learned judge at the trial did not deem such evidence material, though it had a tendency to point out specifically what the hearers understood the speaker to mean when he referred to a substance at their command more powerful than a gatling-gun, *mitrailleuse*, and police. Much complaint is made in the appellant's brief of the persistence of the then assistant district attorney in endeavoring to get this fact before the jury. The rulings, however, against the counsel for the people were prompt, decisive, and uniform. It does not appear to us that a verdict in favor of the people was obtained by such undue persistence, but from a perusal of the record it would rather strike the mind that the conviction was obtained in spite of such repeated efforts to get into the case what the trial judge early ruled to be incompetent. It is also urged upon our attention that a new trial should be had, for the reason that the court erred in permitting the district attorney to say to the jury that they should not believe the defendant and his witnesses, because they did not believe in a Supreme Being. The case does not show that the district attorney made any such argument to the jury, or that the defendant's counsel objected to anything which he said to them in regard to the credibility of the several witnesses. The judgment of conviction should be affirmed. All concur.